IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JACOB D. HAWKINS,
      Plaintiff,

vs.                                    Case No.: 3:14cv687/LAC/EMT

NURSE SHARP,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Jacob D. Hawkins ("Hawkins"), an inmate of the Florida Department of Corrections ("FDOC") proceeding pro se and in forma pauperis, commenced this action by filing a civil rights complaint under 42 U.S.C. § 1983 (ECF No. 1). Defendant Nurse Sharp filed a Motion to Dismiss for failure to state a claim on which relief may be granted (ECF No. 43). Hawkins then filed a motion to amend his complaint and a proposed third amended complaint (ECF Nos. 44, 45). He also filed a response in opposition to the motion to dismiss (ECF No. 53). Nurse Sharp opposes Hawkins' request to amend his complaint, on the ground that amendment would be futile (ECF No. 48).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that this action should be dismissed for failure to state a claim on which relief may be granted, and that amendment of the complaint would be futile.

I.       PLAINTIFF'S ALLEGATIONS

      In Hawkins' Second Amended Complaint (ECF No. 25), he alleges that on November 27, 2014, while he was housed at Blackwater River Correctional Facility ("Blackwater C.F."), he

submitted a sick call request for an HIV test and gave the reasons for his request (*id.* at 6).[1]
Hawkins alleges that when he went to the medical department for the HIV test, Nurse Sharp
informed him that health care practitioners may not disclose a patient's personal information or
information about an HIV test (*id.*).  Nurse Sharp gave Hawkins an HIV test (*id.* at 7).  Hawkins
alleges Nurse Sharp then disclosed to prison security staff the private information that Hawkins
disclosed in his sick call request (ECF No. 25 at 6–7).  Hawkins alleges a security officer charged
him with a disciplinary infraction based upon the information he disclosed in his sick call request
(*id.*).  He alleges the disciplinary report ("DR") stated the following:

> Inmate Hawkins, Jacob DC #536856 housed in Y1-203L is being charged with a
> violation of Rules of Prohibited Conduct.  9-7 Sex Acts or Unauthorized Physical
> Contact Involving Inmates.  On November 27, 2014, I was assigned as assistant shift
> supervisor.  At approximately 3:50 pm I was contacted by on duty [sic] medical staff
> about Inmate Hawkins, Jacob DC#536856, inmates [sic] sick-call request.  This
> disciplinary report was submitted late, due to an ongoing investigation into the
> information submitted on Inmate Hawkins sick-call request.  Inmate Hawkins stated
> he had sex with (5) five inmate since his last HIV test.  Because the last guy he had
> sex with was his cell mate, after they had sex he overheard him say "I just gave you
> HIV you stupid bitch."  He wanted to request another HIV test.  Inmate Hawkins was
> interviewed and admitted to having sex with other inmates.  Inmate Hawkins would
> not disclose the names of any inmates involved in the sex acts with him.  Inmate
> Hawkins will remain in administrative confinement pending disciplinary team action.

(ECF No. 25 at 9).  Hawkins alleges that the security officer who notified him of the DR read the
allegations out loud, so that every inmate in his dormitory heard the personal information he
disclosed in his sick call request (*id.* at 6–7).  Hawkins alleges that shortly after the officer read the
disciplinary report out loud, inmates began calling him a faggot, and some inmates tried to have sex
with him (*id.* at 7).  He alleges that on February 9, 2015 (after he commenced this lawsuit), he was
raped by Inmate Toney Williams, who was one of the inmates who heard the officer read the DR
(*id.*).  Hawkins alleges that after the rape, he was given medication for his possible exposure to HIV,
but medical staff told him that the virus may not become evident for several years (*id.*).  Hawkins
alleges he is no longer at Blackwater River C.F. (*id.*).

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic
docketing system.

Hawkins claims that Nurse Sharp's disclosure of his personal information to security staff violated his Fourteenth Amendment right to privacy (ECF No. 25 at 6, 10). He also claims that Sharp's disclosure showed "callous indifference" and placed his life in danger (*id.* at 7). Hawkins seeks punitive damages in the amount of $50,000.00 (*id.* at 10).

II.      DEFENDANT'S MOTION TO DISMISS

Nurse Sharp requests dismissal of this action, with prejudice, on the ground that Hawkins' allegations fail to state a plausible Fourteenth Amendment claim (ECF No. 43). Nurse Sharp contends that the Fourteenth Amendment protects only privacy rights which are "fundamental" or "implicit to the concept of ordered liberty." Sharp argues that Hawkins does not allege that his HIV test results or HIV status, or any other similar medical information, was disclosed to anyone; rather, he alleges only that Nurse Sharp disclosed "background information," i.e., Hawkins' admissions that he violated prison rules prohibiting sex acts between inmates. Further, Nurse Sharp disclosed the information only to prison security staff. Nurse Sharp contends that Hawkins had no "fundamental" privacy right in the information that he had unauthorized sexual contact with other inmates; nor is maintaining the privacy of such information "implicit to the concept of ordered liberty."

Nurse Sharp further contends that even if the information that Hawkins disclosed was constitutionally protected, the prison's need of the information for security purposes overrides Hawkins' right to privacy in the information. Sharp contends that Blackwater C.F. has a legitimate penological interest in enforcing prison rules designed to promote prison safety and security, and sexual activity between inmates jeopardizes both prison security and inmate and officer safety. Nurse Sharp contends that open sexual activity among inmates would promote instances of sexual harassment, the creation of a sexual marketplace, the exploitation of weaker, mentally ill, or homosexual inmates, conflict among sexual rivals, and conflict among spurned lovers. Additionally, permission of such acts would also expose prison staff to lewd exhibitions and require them to constantly monitor such activity for "true" consent—versus the already prolific problem of rape—disrupting overall security. Further, permission of such acts would facilitate the transmission of communicable diseases, such as HIV, in an already high-risk and closed population.

III.      ANALYSIS

A dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is governed by the following standards. The allegations of the complaint are taken as true and are construed in the light most favorable to the plaintiff. Davis v. Monroe Cnty. Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679. Finally, in civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . . A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted).

In <u>Whalen v. Roe</u>, 429 U.S. 589, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977), the Supreme Court recognized a constitutional interest in "avoiding disclosure of personal matters." *Id.* at 599. A constitutional right to privacy exists within the liberty component of the due process protected by the Fourteenth Amendment. *See* <u>Padgett v. Donald</u>, 401 F.3d 1273, 1280 (11th Cir. 2005) (citing <u>Roe v. Wade</u>, 410 U.S. 113, 152–53, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973)); <u>Plante v. Gonzalez</u>, 575 F.2d 1119, 1127 (5th Cir. 1978) (citing <u>Griswold v. Connecticut</u>, 381 U.S. 479, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965)). Only personal rights that can be deemed "fundamental" or "implicit in the concept of ordered liberty" are included in the guarantee of personal privacy. <u>Roe</u>, 410 U.S. at 152 (citations omitted). Further, the right to privacy has "some extension" to activities relating to marriage, procreation, contraception, family relationships, and child rearing and education. *Id.* at 152–53 (citations omitted). This privacy right has been described as the "right to confidentiality." <u>James v. City of Douglas, Ga.</u>, 941 F.3d 1539, 1543 (11th Cir. 1991) (internal quotation marks and citation omitted).

In <u>Harris v. Thigpen</u>, the Eleventh Circuit recognized that "prison inmates, in spite of their incarceration, 'retain certain fundamental rights of privacy.'" 941 F.2d 1495, 1513 (11th Cir. 1991) (quoting <u>Hochins v. KQED, Inc.</u>, 438 U.S. 1, 5 n.2, 98 S. Ct. 2588, 57 L. Ed. 2d 553 (1978)). However, the court also noted that "[t]he precise nature and scope" of the privacy right at issue in that case ( i.e., the right to privacy in medical records, including HIV status) was "rather ill-defined." *Id.* at 1513. At issue in <u>Harris</u> were the policies of the Alabama Department of Corrections' ("ADOC") mandatory HIV testing and segregation of inmates, as well as non-consensual disclosure of inmates' HIV-positive diagnoses to other inmates, inmates' families, and other outside visitors. *Id.* at 1512. The Eleventh Circuit "assume[d] arguendo that prisoners enjoy some significant constitutionally-protected privacy interest in preventing the non-consensual disclosure of their HIV-positive diagnoses to other inmates, as well as to their families and other outside visitors to the facilities in question." *Id.* at 1513. The court balanced "the limited personal privacy interests (assuming such exist) of the seropositive inmates, with those legitimate interests that underlie the [A]DOC's decision to segregate such inmates from the general prison population," by considering the following factors:

(a) whether there is a "valid, rational connection" between the regulation and a legitimate government interest put forward to justify it; (b) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (c) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates and the allocation of prison resources generally; and (d) whether the regulation represents an "exaggerated response" to prison concerns.

*Id.* at 1515–21 (quoting Turner v. Safley, 482 U.S. 78, 89–91, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987)).  The Eleventh Circuit held that to the extent the segregation policy encroached upon the privacy rights of HIV-positive inmates, it was a reasonable infringement in light of the inmate interests at stake (both HIV-positive and general population inmates), and the difficult decisions that the state department of corrections must make in determining how best to treat and control the spread of a communicable, incurable, always fatal disease within its correctional facilities.  *Id.* at 1521.  In light of the court's finding that segregation of HIV-positive prisoners, with the disclosure of HIV status that necessarily resulted from that segregation, was reasonable, the court also found reasonable the additional incursion upon inmates' disclosural privacy rights caused by the ADOC's affirmative disclosure of prisoners' HIV status to the another state agency (the state parole board).  *Id.* at 1521 n.39.

In this case, FDOC policy governing inmate discipline clearly prohibits sexual behavior between inmates, and sanctions such conduct with placement in disciplinary confinement and/or forfeiture of gain time.  *See* Fla. Admin. Code r. 33-601.314, Rules of Prohibited Conduct and Penalties for Infractions, Sect. 9, Miscellaneous Infractions, 9-7 Sex acts or unauthorized physical contact involving inmates (punishable by placement in disciplinary confinement for maximum of 30 days and forfeiture of maximum of 90 days of gain time).  The FDOC's Inmate Orientation Handbook clearly notifies inmates that they are responsible for abiding by all institutional rules and policies, including disciplinary rules identifying prohibited conduct.  *See* Florida Department of Corrections Inmate Orientation Handbook, p. 15, Discipline (Revised 12/14/12).  The FDOC disciplinary rules expressly provide:

There is no such thing as legal consensual sex in prison.  Department of Corrections policy and the law prohibit sexual behavior between inmates.  Those who commit sexual assault/battery or sexual harassment face legal action.

*Id.*. p. 17.

The Supreme Court has described "internal security" as "perhaps the most legitimate of penological goals." <u>Overton v. Bazzetta</u>, 539 U.S. 126, 133, 123 S. Ct. 2162, 156 L. Ed. 2d 162 (2003). Federal courts have held that prohibiting sexual activity in prison is a legitimate governmental interest. *See* <u>Veney v. Wyche</u>, 293 F.3d 726, 733 (4th Cir. 2002) (recognizing that "sexual activity between [prisoners] . . . would jeopardize prison security" and "raise concerns about the transmission of diseases, such as HIV."); <u>Fields v. Smith</u>, 712 F. Supp. 2d 830, 868 (E.D. Wis. 2010) ("The correctional environment can be dangerous, and one major area of security concern is sexual activity, especially sexual activity among inmates, which has a history of being extremely dangerous and volatile."); *see also, e.g.*, <u>Morales v. Pallito</u>, No. 2:13 CV 271, 2014 WL 1758163, at *11 (D. Vt. Apr. 29, 2014) (unpublished but recognized for persuasive authority) (reaching the "common sense determination" that banning sexual interactions "certainly qualifies as having a valid, rational connection to preventing prison violence and promoting safety"); <u>Lute v. Johnson</u>, No. 1:08-CV-00234-EJL, 2012 WL 913749, at *5 (D. Idaho Mar. 16, 2012) ("[I]t is beyond dispute that prohibiting sexual activity in prison is a legitimate governmental interest."); <u>Pope v. Or. Dep't of Corr.</u>, No. 3:10-CV-00632-KI, 2012 WL 1866601, at *4 (D. Or. May 22, 2012) ("There is no question that prohibiting sexual activity in prison is a legitimate governmental interest[.]"); <u>Mintun v. Peterson</u>, No. CV06–447–S–BLW, 2010 WL 1338148, at *11 (D. Idaho Mar. 30, 2010) ("[P]rotecting inmates from sexually-transmitted diseases and keeping health care costs low justify the prohibition on sexual activity between inmates.").

Furthermore, Nurse Sharp's disclosure was reasonably related to this legitimate governmental interest of prohibiting sexual activity in prison. Nurse Sharp disclosed the information only to prison security staff, specifically, the assistant shift supervisor of Hawkins' dormitory.[2]

---

[2] Although Hawkins alleged in his court filings that the correctional officer who delivered the disciplinary report read the report out loud in a dormitory full of inmates, and that Hawkins suffered severe consequences from the officer's disclosure (*see* ECF No. 1 at 12–13; ECF No. 15 at 3–4; ECF No. 16 at 13; ECF No. 25 at 6–7), Hawkins has never brought, or attempted to bring, a claim against that officer. The only persons against whom Hawkins has brought, or attempted to bring, a claim are members of the medical staff (specifically, Nurse Sharp, Health Services Administrator Jason Wright, and Dr. S. Melvin) and Warden Scott Middlebrooks (for his alleged failure to respond to one of Hawkins' grievances) (*see* ECF No. 1, 16, 25, 45).

Assuming arguendo that the right to privacy extends to the activities that Hawkins disclosed, that is, his sexual activity with other inmates (in light of the Supreme Court's recognition that the right has "some extension" to activities relating to marriage, procreation, contraception, family relationships, and child rearing and education), Nurse Sharp's disclosure of the information to only prison security staff was reasonably related to the legitimate penological interests in maintaining order and security in the institution (through enforcement of the FDOC's rules prohibiting sexual contact between inmates), and controlling the spread of communicable disease within its correctional facilities.  Further, the alternative of not notifying security staff of sexual activity between inmates would put the health and safety of inmates and institutional staff at risk, and reporting the information was not an exaggerated response.  *See, e.g.*, <u>Simpson v. Joseph</u>, 248 F. App'x 746, 747–48 (6th Cir. 2007) (unpublished) (inmate's right to privacy was not violated by prison regulation requiring guard to accompany segregation inmates to medical appointments, notwithstanding that guard could overhear discussion about sensitive medical information, as regulation was reasonably related to legitimate penological interests in prison security and protecting medical staff from potentially dangerous segregation inmates, and alternative of posting guard outside examination room would have put safety of medical personnel at risk).  Based upon the foregoing, the undersigned concludes that Nurse Sharp carried his burden of establishing that the factual allegations of the Second Amended Complaint fail to state a plausible violation of the Fourteenth Amendment's right to privacy.

Furthermore, to the extent Hawkins argues that Nurse Sharp is liable under § 1983 for a violation of state regulations prohibiting health care practitioners from disclosing certain patient information without the patient's authorization, recovery is unavailable.  With Hawkins' response to Nurse Sharp's motion to dismiss, he submitted a document issued by the Florida Department of Health's ("FDOH") Division of Medical Quality Assurance, which instructs patients on how to file an administrative complaint against a health care practitioner (ECF No. 53 at 28 ("Exhibit D")).  The document instructs that because medical records are needed to process a complaint, and "[s]ince a health care practitioner cannot disclose his or her patient names or records without authorization," a complainant must complete and sign an Authorization for Release of Patient Information form when submitting a complaint to the FDOH (*see id.*).  The quoted language is a reference to Florida

Statutes § 456.057, which governs disclosure of medical records and information disclosed to a health care practitioner by a patient in the course of the patient's care and treatment. The statute provides, in relevant part:

> (7)(a) . . . [medical] records may not be furnished to, and the medical condition of a patient may not be discussed with, any person other than the patient, the patient's legal representative, or other health care practitioners and providers involved in the patient's care or treatment, except upon written authorization from the patient. However, such records may be furnished without written authorization under the following circumstances:
>
> 1. To any person, firm, or corporation that has procured or furnished such care or treatment with the patient's consent.
> . . . .
> (c) Information disclosed to a health care practitioner by a patient in the course of the care and treatment of such patient is confidential and may be disclosed only to other health care practitioners and providers involved in the care or treatment of the patient, if allowed by written authorization from the patient, or if compelled by subpoena at a deposition, evidentiary hearing, or trial for which proper notice has been given.

Fla. Stat. § 456.057(7)(a), (c). The statute further provides remedies for violations of its provisions, including disciplinary action by the appropriate licensing authority or enforcement action (including injunctive relief and fines not to exceed $5,000 per violation) by the State of Florida Attorney General.[3] *See* Fla. Stat. § 456.057(15), (16).

Section 1983 does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right. *See* Knight v. Jacobson, 300 F.3d 1272, 1276 (11th Cir. 2002) (citing Paul v. Davis, 424 U.S. 693, 698–99, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976)). While the violation of state law may (or may not) give rise to a state tort or other civil claim, it is not enough by itself to support a claim under section 1983. *See* Knight, 300 F.3d at 1276 (citing Paul, 424 U.S. at 699 (rejecting the argument that "every legally cognizable injury which may have been inflicted by a state official acting 'under color of law' establish[es] a violation of the Fourteenth Amendment"), and Lovins v. Lee, 53 F.3d 1208, 1210–11 (11th Cir. 1995)

---

[3] The remedy of disciplinary action by a licensing authority is available for violators who are licensed by the State of Florida, and the remedy of enforcement action by the Florida Attorney General is available for violators who are not licensed by the State. *See* Fla. Stat. § 456.057(15), (16).

(holding that while the plaintiff may have a claim under state law against defendants because they acted contrary to state law in releasing an inmate who harmed her, that violation of state law did not give her a federal constitutional claim)). Hawkins has cited no authority for the proposition that a violation of state law governing a health care practitioner's disclosure of confidential information provided by a patient automatically contravenes federal law. Therefore, the court rejects the notion that Florida law procedures governing such disclosures are written into the federal Constitution.

Moreover, although Hawkins does not expressly assert any state law claims in either his Second Amended Complaint or his proposed third amended complaint, to the extent his Second Amended Complaint could be liberally construed as asserting a state law claim, or such a claim could be asserted in a proposed amended complaint, the claim should be dismissed without prejudice to Hawkins' pursuing it (if a civil action for damages for a violation of § 456.057 exists) in state court. It is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over any state claims against a defendant. *See* Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997). Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. *See also* United Mine Workers v. Gibbs, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 1138–39, 16 L. Ed. 2d 218 (1966). Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. Baggett, 117 F.3d at 1353 (citing Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994); Exec. Software N. Am. v. United States Dist. Court, 15 F.3d 1484, 1493 (9th Cir. 1994); New England Co. v. Bank of Gwinnett Cnty., 891 F. Supp. 1569, 1578 (N.D. Ga. 1995); Fallin v. Mindis Metals, Inc., 865 F. Supp. 834, 841 (N.D. Ga. 1994)). The Eleventh Circuit has encouraged district courts to dismiss any remaining state claims when the federal claims have been dismissed prior to trial. *See* Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004).

Taking these factors into account in this case, the court concludes that any state law claim asserted by Hawkins should be dismissed to permit him to pursue it in a more appropriate forum. While it would be convenient for Hawkins to continue litigating his case in this court, this court has

a substantial number of original jurisdiction cases awaiting review, and neither judicial economy nor fairness to other litigants support retaining jurisdiction of Hawkins' state claim and delaying justice in other cases. Furthermore, the state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so. Moreover, the supplemental jurisdiction statute contains a tolling provision. *See* 28 U.S.C. § 1367(d) (state claims asserted in federal court along with "related" federal claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed"); Personalized Media Commc'ns, LLC v. Scientific-Atlantic, Inc., 493 F. App'x 78, 82 n.1 (11th Cir. 2012) ("'Section 1367(d), giving the plaintiff at least 30 days to re-file in state court after a federal court declines to exercise supplemental jurisdiction, removes the principal reason for retaining a case in federal court when the federal claim belatedly disappears.'") (citation omitted). In Krause v. Textron Fin. Corp., 59 So. 3d 1085 (Fla. 2011), the Supreme Court of Florida held that Florida state law claims are tolled while they are pending in federal court, and the plaintiff shall have 30 days after dismissal by the federal court to re-file in state court. *See id.* (citing 28 U.S.C. § 1367). This is specifically "to prevent the limitations period from expiring" on the Florida state law claim while it is being pursued in federal court in conjunction with the federal claim. *Id.* at 1091. Therefore, Hawkins' pursuit of any state law claim in state court would not be prejudiced by this court's declining to exercise supplemental jurisdiction over those claims.

IV. PLAINTIFF'S MOTION TO AMEND AND PROPOSED THIRD AMENDED COMPLAINT

After Nurse Sharp filed the motion to dismiss, Hawkins sought leave to amend his Second Amended Complaint (ECF No. 44). In Hawkins' proposed third amended complaint, he adds Doctor S. Melvin as a Defendant, and alleges that Dr. Melvin "had to play a part in the disclosure, because she approves everything that goes on with patients in medical" (ECF No. 45 at 5–6). Hawkins alleges Nurse Sharp and Dr. Melvin must have known that disclosure of the information in his sick call request would likely cause him harm, and their "callous indifference" created an unreasonable risk of serious harm to his health and safety, in violation of the Eighth Amendment (*id.* at 7–8). Hawkins alleges that Nurse Sharp and Dr. Melvin violated state regulations which prohibit

health care practitioners from disclosing the names and medical records of patients without the patient's authorization (*id.* at 7).

The Federal Rules of Civil Procedure provide that the court should freely give leave to amend when justice so requires. Fed. R. Civ. P. 15(a)(2).[4] The law favors rulings on the merits rather than on the pleadings. Bank v. Pitt, 928 F.2d 1108, 1112 n.6 (11th Cir. 1991); Friedlander v. Nims, 755 F.2d 810, 813 & n.3 (11th Cir. 1985). Thus:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

Rosen v. TRW, Inc., 979 F.2d 191, 194 (11th Cir. 1992) (quoting Foman v. Davis, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). However, a motion to file an amended complaint is properly denied where the new claims asserted would be subject to dismissal as a matter of law. *See* Hall v. United Ins. Co. of America, 367 F.3d 1255, 1263 (11th Cir. 2004) (citing Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999)).

In this case, amendment of Hawkins' complaint would be futile. Hawkins seeks to add Dr. S. Melvin as a Defendant on the basis that Dr. Melvin is Nurse Sharp's supervisor and allegedly knew about Sharp's disclosure of Hawkins' personal information to security staff (*see* ECF No. 45). However, in light of the court's conclusion that Hawkins failed to state a plausible Fourteenth Amendment claim against Nurse Sharp, the person who allegedly made the actual disclosure, Hawkins cannot state a plausible Fourteenth Amendment claim against Sharp's supervisor, Dr. Melvin, based upon the same disclosure. *See* Myers v. Bowman, 713 F.3d 1319, 1328 (11th Cir. 2013) ("But a supervisor may not be held liable under section 1983 unless the supervised official committed an underlying violation of a constitutional right.").

Additionally, amendment of the complaint to add an Eighth Amendment claim, based upon the disclosure of Hawkins' personal information to security staff, would be futile. To state an Eighth

---

[4] Hawkins has twice amended his complaint (*see* ECF Nos. 16, 25); therefore, he is not entitled to amend the complaint "as a matter of course" since he has already availed himself once of this opportunity. *See* Fed. R. Civ. P. 15(a)(1), (2).

Amendment violation, a prisoner must satisfy both an objective and a subjective inquiry. Chandler v. Crosby, 379 F.3d 1278, 1289–90 (11th Cir. 2004); Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). Under the objective component, a prisoner must prove that the condition of which he complains is sufficiently serious to violate the Eighth Amendment. *See* Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). Specifically, a prisoner must prove a "serious medical need" or the denial of "the minimal civilized measure of life's necessities." Chandler, 379 F.3d at 1289–90; *see also* Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981); Farrow, 320 F.3d at 1243. "The challenged prison condition must be 'extreme'" and must pose "an unreasonable risk of serious damage to his future health or safety." Chandler, 379 F.3d at 1289–90 (quoting Hudson, 503 U.S. at 9) (other citation omitted).

Under the subjective component, the prisoner must prove that the prison official acted with "deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *see also* Hudson, 503 U.S. at 8; Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991). To prove deliberate indifference, the prisoner must show that the defendant prison official "acted with a sufficiently culpable state of mind" with regard to the serious prison condition or serious medical need in issue. Chandler, 379 F.3d at 1289–90. An individual may be held liable under the Eighth Amendment only if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Negligence or even gross negligence does not satisfy this standard. Chandler, 379 F.3d at 1289–90; Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996).

Here, the factual allegations of Hawkins' proposed third amended complaint do not plausibly suggest that the medical staff's disclosure of Hawkins' admitted sexual activity to security staff, which activity undisputably violated prison rules, posed an unreasonable risk of serious damage to Hawkins' future health or safety (*see* ECF No. 45 at 5–7). Nor do Hawkins' proposed allegations plausibly suggest that Nurse Sharp or Dr. Melvin knew that the disclosure of Hawkins' sexual activity to security staff would result in other inmates learning of it (*see id.*). Therefore, his proposed allegations do not state a plausible claim of deliberate indifference under the Eighth

Amendment. Because amendment of the complaint would be futile, Hawkins' motion to amend should be denied.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That Defendant Sharp's Motion to Dismiss (ECF No. 43) be **GRANTED**;

2.      That Plaintiff's Fourteenth Amendment claim be **DISMISSED with prejudice** for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii);

3.      That any state law claims be **DISMISSED without prejudice** to Plaintiff's pursuing them in state court;

4.      That Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 44) be **DENIED as futile**, and the proposed third amended complaint (ECF No. 45) **NOT TAKE EFFECT**; and

5.      That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida this 3rd day of November 2015.


*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**